David T. Biderman (Bar No. 101577)
DBiderman@perkinscoie.com
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, CA 94105-3204
Telephone: 415.344.7000
Facsimile: 415.344.7050

Charles C. Sipos (*pro hac vice*)
CSipos@perkinscoie.com
Jeffrey M. Hanson (*pro hac vice*)
JHanson@perkinscoie.com
Mica D. Klein (*pro hac vice*)
MicaKlein@perkinscoie.com
Lauren Watts Staniar (*pro hac vice*)
LStaniar@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000

*Attorneys for Defendant*
*General Mills Sales, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| BEVERLY TRUXEL and STEPHEN HADLEY, individually, and on behalf of those similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>GENERAL MILLS SALES, INC.,<br><br>Defendant. | Case No. 4:16-cv-04957-JSW<br><br>**GENERAL MILLS SALES, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>[Fed. R. Civ. P. 12(b)(6)]<br><br>Date:     May 3, 2019<br>Time:     9:00 a.m.<br>Room:    Courtroom 5<br>Judge:    Hon. Jeffrey S. White |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.    ARGUMENT .................................................................................................. 2

    A.    Recent Case Law Undermines Plaintiffs' Central Contention that the Labels are Misleading, Warranting Outright Dismissal of the Complaint.............. 2

    B.    General Mills' Labels Are Not Misleading to a Reasonable Consumer ................ 7

        1.    The Court Should Dismiss With Prejudice All Claims Based on True and Not Misleading Statements. ....................................................... 7

        2.    The Court Should Dismiss With Prejudice All Claims Based on Nonactionable Puffery. ............................................................... 9

    C.    The Court Should Dismiss with Prejudice Claims That Are Preempted ............. 11

        1.    Preempted Nutrient Content Claims ...................................................... 11

        2.    Preempted Health Claims.......................................................... 13

III.    CONCLUSION ............................................................................................. 15

REPLY ISO MOTION TO DISMISS
4:16-cv-04957-JSW

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Becerra v. Coca-Cola, Co.*,
  2018 WL 1070823 (N.D. Cal. Feb. 27, 2018)................................................. *passim*

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
  2018 WL 3995832 (N.D. Cal. Aug. 21, 2018)...........................................................5

*Chuang v. Dr. Pepper Snapple Grp., Inc.*,
  2017 WL 4286577 (C.D. Cal. Sept. 20, 2017)......................................................4, 7

*Clark v. Perfect Bar, LLC*,
  2018 WL 7048788 (N.D. Cal. Dec. 21, 2018) ............................................... *passim*

*Cusano v. Klein*,
  485 F. App'x 175 (9th Cir. 2012) ...........................................................................4

*Fisher v. Monster Beverage Corp.*,
  2013 WL 4804385 (C.D. Cal. July 9, 2013) ...........................................................5

*Hadley v. Kellogg Sales Co. (Hadley II)*,
  273 F. Supp. 3d 1052 (N.D. Cal. 2017) ....................................................... *passim*

*In re Quaker Oats Labeling Litig.*,
  2012 WL 1034532 (N.D. Cal. Mar. 28, 2012)............................................13, 14, 15

*j2 Global, Inc. v. Integrated Global Concepts, Inc.*,
  2013 WL 3272922 (C.D. Cal. Jun. 27, 2013) .........................................................3

*Krommenhock v. Post Foods, LLC (Krommenhock II)*,
  2018 WL 1335867 (N.D. Cal. Mar. 15, 2018)............................................... *passim*

*Manuel v. Pepsi-Cola, Co.*,
  2018 WL 2269247 (S.D.N.Y. May 17, 2018)........................................................5, 6

*Painter v. Blue Diamond Growers*,
  --- F. App'x ---- 2018 WL 6720560 (9th Cir. Dec. 20, 2018) ................................4

*Sanders v. Apple Inc.*,
  672 F. Supp. 2d 978 (N.D. Cal. 2009) ...................................................................7

*Viggiano v. Hansen Natural Corp.*,
  944 F. Supp. 2d 877 (C.D. Cal. 2013)....................................................................4

*W. Trend, Inc. v. AMCO Ins. Co.*,
  2015 WL 263934 (C.D. Cal. Jan. 8, 2015) .........................................................14

-ii-

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008)....................................................................................................4

**STATUTES**

21 U.S.C. § 343-1(a) ..................................................................................................................5

21 U.S.C. § 343(r)(3)(C) ..........................................................................................................13

**REGULATIONS**

21 C.F.R. § 101.13(b) ..........................................................................................................11, 12

21 C.F.R. § 101.14 ....................................................................................................................15

21 C.F.R. § 101.65(d)(1) ...........................................................................................................11

21 C.F.R. § 101.75 ..............................................................................................................13, 14

21 C.F.R. § 101.77 ..............................................................................................................14, 15

21 C.F.R. § 101.81 ..........................................................................................................13, 14, 15

# SUMMARY OF ARGUMENT

**Reasonable Consumer—Complete Dismissal.** Recent authority confirms that Plaintiffs' TAC should be dismissed in its entirety because General Mills Cereals' labels are not misleading to a reasonable consumer, and the TAC does not plausibly allege that General Mills Cereals cause any of the health harms identified in the TAC. *See Clark v. Perfect Bar, LLC*, 2018 WL 7048788 (N.D. Cal. Dec. 21, 2018); *Becerra v. Coca-Cola, Co.*, 2018 WL 1070823 (N.D. Cal. Feb. 27, 2018). *Clark* and *Becerra* compel full dismissal of the TAC. Plaintiffs' procedural objections to this Court applying these decisions lack merit.

**Reasonable Consumer—Individual Claims.** Many of the individual labeling claims remain subject to dismissal under the Court's reasoning in *Hadley v. Kellogg Sales Co. (Hadley II)*, 273 F. Supp. 3d 1052 (N.D. Cal. 2017). Plaintiffs' arguments to the contrary unreasonably expand the dismissal order in *Krommenhock v. Post, LLC (Krommenhock II)*, 2018 WL 1335867 (N.D. Cal. Mar. 15, 2018), and ignore clear similarities between claims in the TAC and those dismissed in *Hadley II*.

**Federal Preemption—Individual Claims.** The TAC challenges dozens of implied nutrient content claims and health claims that are expressly preempted under the Nutrition Labeling and Education Act (NLEA), *Hadley II*, and this Court's prior dismissal orders. *See* September 20, 2017, Dismissal Order (Dkt. No. 60) ("First Dismissal Order"); September 28, 2018, Dismissal Order (Dkt. No. 76) ("Second Dismissal Order"); *Hadley II*, 273 F. Supp. 3d at 1076–77. Plaintiffs' argument to the contrary narrows *Hadley II's* preemption holding in violation of this Court's admonition that Plaintiffs are to interpret *Hadley II's* dismissal order broadly.

**Breach of Warranties.** Because all the claims in the TAC are either not misleading to a reasonable consumer, puffery, or preempted, Plaintiffs' breach of warranty claims cannot survive. *See Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 893 (C.D. Cal. 2013).

1

## I.    INTRODUCTION

2          Two bodies of authority from within this District compel dismissal of Plaintiffs' Third

3   Amended Complaint ("TAC"). Plaintiffs' Opposition to General Mills' Motion to Dismiss

4   ("Opp.") concedes these cases' relevance to their claims. Opp. at 3–5, 6–11. The applicability of

5   this caselaw cannot be disputed because it involves lawsuits filed by the same Plaintiffs' counsel,

6   involving similar claims and legal theories, and attempting (as does the TAC) to tether consumer

7   protection claims to a strained interpretation of scientific studies that does not support the TAC's

8   theory of deception. The Opposition nonetheless argues that this Court should disregard this

9   authority for procedural reasons, or instead offers an overly narrow reading of this caselaw that is

10  not in keeping with this Court's repeated direction that any doubts about the viability of

11  Plaintiffs' claims should be resolved in favor of dismissal.

12         Some of this authority supports dismissal of the TAC in one stroke. *Clark v. Perfect Bar,*

13  *LLC*, 2018 WL 7048788 (N.D. Cal. Dec. 21, 2018), dismissed an indistinguishable complaint,

14  holding that no "reasonable consumer" is misled about a food's sugar content when its labels

15  plainly disclose that content. Similarly, *Becerra v. Coca-Cola, Co.*, 2018 WL 1070823 (N.D. Cal.

16  Feb. 27, 2018), dismissed a complaint alleging that the defendant's labeling misled consumers

17  about the products' supposed negative health effects because the science the complaint relied on

18  did not plausibly allege that the products *caused* those negative effects. The Opposition insists

19  that *Clark* and *Becerra* should not be considered because this Court has already "decided in

20  Plaintiffs' favor" that their theory of deception is viable. Opp. at 3. This is not correct. Neither of

21  this Court's two prior dismissal orders embraced Plaintiffs' theory of relief in the manner the

22  Opposition suggests, nor did these orders consider the reasoning or applicability of *Clark* or

23  *Becerra*. To the contrary, this Court's consistent view has been that relevant authority in similar

24  cases should apply to Plaintiffs' claims, strictly and in favor of dismissal. First Dismissal Order at

25  4; Second Dismissal Order at 5. These considerations weigh heavily in favor of applying *Clark*

26  and *Becerra* here, and dismissing the TAC in full as a result.

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

But, even in the absence of *Clark* and *Becerra*, the TAC fails. That is because the individual labeling claims the TAC challenges are barred by the rationales of either *Hadley v. Kellogg Sales Co. (Hadley II)*, 273 F. Supp. 3d 1052 (N.D. Cal. 2017), or *Krommenhock v. Post Foods, LLC (Krommenhock II)*, 2018 WL 1335867 (N.D. Cal. Mar. 15, 2018). *See generally* Motion (Dkt. No. 86) at 8–14; Declaration of Charles C. Sipos in Support of Request for Judicial Notice, Exhibit A (Dkt. No. 88) ("Exhibit A"). Plaintiffs argue that the TAC is a "good faith" attempt to adhere to this authority and that General Mills' arguments to the contrary are tantamount to an accusation of "bad faith" conduct. Opp. at 1. But General Mills' Motion is not directed at Plaintiffs' subjective intentions—it is directed at the fact that the TAC challenges claims that should be dismissed.

The TAC should be dismissed with prejudice.

## II.    ARGUMENT

**A.    Recent Case Law Undermines Plaintiffs' Central Contention that the Labels are Misleading, Warranting Outright Dismissal of the Complaint**

Plaintiffs' Opposition does not dispute that if the decisions in *Clark* or *Becerra* are applied here, the TAC should be dismissed. Opp. at 3–5. Plaintiffs argue instead that this Court is barred from considering these decisions, or that these decisions are "outliers" that this Court should reject. Opp. at 3–6. Neither assertion is correct.

First, this Court has authority to consider *Clark* and *Becerra* when determining whether the TAC alleges facts sufficient to show that the labels of General Mills' Cereals mislead a "reasonable consumer." Plaintiffs argue that this Court's dismissal orders "already decided in Plaintiffs' favor" the supposed "validity of Plaintiffs' general case theory under the reasonable consumer standard, [and] the sufficiency of the scientific support for their claims," because those orders adopted the dismissal rulings in the *Hadley* and *Krommenhock* cases. Opp. at 1, 4.

But in both of this Court's dismissal orders, adoption of the *Hadley* and *Krommenhock* rulings was premised on "conservation of judicial resources," the fact that the cases raised "similar legal issues," had "similar legal theories," and were filed by the same "Plaintiffs' counsel." First Dismissal Order at 2; Second Dismissal Order at 2. Yet *all* these same criteria

-2-

apply to adoption of *Clark* and *Becerra*, which are cases filed by the same Plaintiffs' counsel that involve claims of misleading labeling due to alleged excessive added sugar (*Clark*) and are tied to scientific studies that plaintiffs contend support their theory of deception (*Clark* and *Becerra*).

So, this Court's rationale for adopting *Hadley* and *Krommenhock* applies with equal strength to *Clark* and *Becerra*. Indeed, because *Clark* and *Becerra* discredit the TAC's theory of liability, application of those rulings here vindicates this Court's interest in the "conservation of judicial resources." First Dismissal Order at 2. Moreover, applying the stricter reasoning of *Clark* and *Becerra* is in keeping with the admonition in both dismissal orders that, when in doubt, the legal viability of Plaintiffs' claims should be viewed narrowly, not broadly. First Dismissal Order at 4; Second Dismissal Order at 5.

Nor is this aspect of General Mills' Motion properly deemed a request for reconsideration. Opp. at 3. The TAC's viability under the "reasonable consumer" standard and the sufficiency of its scientific proof are not issues that "have been decided in Plaintiffs' favor." Opp. at 3. This Court's prior dismissal orders did not reach either of those issues expressly; the portion of the Second Dismissal Order that the Opposition cites dealt specifically with General Mills First Amendment argument, not the reasonable consumer standard. *See* Opp. at 3 (citing Second Dismissal Order at 4-5). So, there is no holding on that point to "reconsider." Regardless, given the intervening rulings in *Clark* and *Becerra*, a renewed motion to dismiss presenting this issue is not properly assessed under standards applicable to motions for reconsideration. *See j2 Global, Inc. v. Integrated Global Concepts, Inc.*, 2013 WL 3272922, at *2 (C.D. Cal. Jun. 27, 2013) ("Although some district courts will treat renewed motions [to dismiss] as motions for reconsideration, they generally do so when nothing material has changed between the two motions' filings. However, when new facts develop, courts generally have discretion to permit a second motion, and will not treat it as a motion for reconsideration.") (rejecting argument that renewed motion to dismiss should be treated as a motion for reconsideration in light of intervening developments in a related proceeding) (internal citations omitted). [1]

---

[1] Even if the prior dismissal orders could be construed to have decided these issues "in Plaintiffs' favor" *sub silentio*, Opp. at 4, this Court has discretion to consider the more recently-issued *Clark*

-3-

Second, when these procedural objections are dispensed with, the Opposition offers little substantive response to the effect *Clark* and *Becerra* have on Plaintiffs' claims. The Opposition does not contest the overwhelming similarity between the allegations in *Clark* and those in the TAC, nor the resulting conclusion that if *Clark* is applied, the TAC must be dismissed. *See* Motion at 3–4. The Opposition likewise does not contest that the TAC fails to plausibly allege that added sugar consumption from General Mills' Cereals actually *causes* any of the health harms identified in the TAC, which is the pleading standard *Becerra* imposes. *Id.* at 4–5.

As to *Clark*, the Opposition's argument that *Clark* is an "outlier" and "contrary to binding precedent" is incorrect. Opp. at 3-4. Courts frequently follow reasoning highly similar to that in *Clark*, by holding that the information on a label considered in its entirety, including factually accurate disclosures of ingredients and nutritional content, cures alleged deception as to a particular labeling claim. *See Painter v. Blue Diamond Growers*, --- F. App'x ----  2018 WL 6720560 at *1 (9th Cir. Dec. 20, 2018) (affirming dismissal on reasonable consumer grounds in light of defendant's "unambiguous labeling or factually accurate nutritional statements") (distinguishing *Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008)); *Chuang v. Dr. Pepper Snapple Grp., Inc.*, 2017 WL 4286577, at *6 (C.D. Cal. Sept. 20, 2017) (label not misleading under "reasonable consumer" standard where "the ingredients lists clearly demonstrate that the products contains more sugar than real fruit and vegetable juice"); *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 892 n.38 (C.D. Cal. 2013) ("In cases where a product's front label is accurate and consistent with the statement of ingredients, courts routinely hold that no reasonable consumer could be misled by the label, because a review of the statement of ingredients makes the composition of the food or drink clear.").

Because Plaintiffs cannot dispute the fact that the labels of General Mills' Cereals clearly and repeatedly disclose the products' sugar content, Opp. at 4, the Opposition argues that these disclosures are insufficient to identify the supposed "health effects" of consuming the Cereals. *Id.* This is contrary to *Clark* and, as described below, belied by the TAC itself insofar as Plaintiffs

---

and *Becerra* decisions. *See Cusano v. Klein*, 485 F. App'x 175, 179 (9th Cir. 2012) (in deciding successive motions, district court has authority to revisit prior determinations).

REPLY ISO MOTION TO DISMISS
4:16-cv-04957-JSW

have *not* plausibly alleged that consuming added sugar in General Mills' Cereals causes the supposed "health effects."[2]

Next, as to *Becerra*, the Opposition concedes that Plaintiffs' allegations do not satisfy the pleading standard *Becerra* imposes: The TAC does not allege that added sugar in General Mills Cereals *causes* any of the health harms that the TAC contends are associated with added sugar consumption. Opp. at 5. Here again, the Opposition argues that the *Becerra* court's holding—that a plausible allegation of causation is required where the plaintiff contends a label is deceptive because of some supposed health harm caused by consuming the product—is not in keeping with what the law requires. But Judge Alsup's reasoning in *Becerra* has been adopted by other courts in dismissing similar cases on the pleadings, where the complaint's theory of deception was premised on some harm that that complaint's allegations did not bear out. *See Becerra v. Dr. Pepper/Seven Up, Inc.*, 2018 WL 3995832, at *9 (N.D. Cal. Aug. 21, 2018) ("the studies [plaintiff] cites do not cross the threshold from allegations of correlation to causation"); *Manuel v. Pepsi-Cola, Co.*, 2018 WL 2269247, at *12 (S.D.N.Y. May 17, 2018) ("Without evidence of causation, plaintiffs cannot establish actual deception—i.e., that contrary to their expectations, plaintiffs 'received a beverage whose consumption is likely to lead to weight gain.'").

Plaintiffs point to the decision in *Hadley II* as relieving them from the obligation to allege causation for the TAC to proceed, arguing that *Hadley II* "implicitly rejected" the causation requirement that *Becerra v. Coca-Cola* imposes. Opp. at 5. But *Hadley II* was issued on August 10, 2017, nearly seven months before the February 27, 2018, decision in *Becerra*. So, the causation analysis in *Becerra* necessarily formed no part of the *Hadley II* court's reasoning. Moreover, the specific study relied on by the court in *Hadley II* was equivocal on the issue of causation in the exact manner that the *Becerra* and *Manuel* courts criticized. *See Hadley II*, 273 F.

---

[2] To the extent Plaintiffs have now characterized their claims as a demand for General Mills to make additional disclosures regarding the purported "health effects" of the sugar content on its labels, Opp. at 4, federal express preemption bars that demand as federal law for the disclosure of sugar content in food imposes no such requirement. *See* 21 U.S.C. § 343-1(a); *Fisher v. Monster Beverage Corp.*, 2013 WL 4804385, at *11 (C.D. Cal. July 9, 2013) ("Plaintiffs seek to impose an obligation to post certain warnings that are not imposed by the FDA. Accordingly, the NLEA preemption provision applies.").

Supp. 3d at 1066 (citing *Hadley*, Second Amended Complaint ¶¶ 63–64 (citing Yang, Quanhe, et al., "Added Sugar Intake and Cardiovascular Diseases Mortality Among US Adults," 174 Journal of the American Medical Association, 516–524, 522 (published online Feb. 3, 2014) ("NHANES Analysis"))).[3]

As to causation, the article cited by the *Hadley II* court concluded by noting several "limitations to [the] study." *See* Request for Judicial Notice, Ex. A (NHANES Analysis) at 522–23. Among those "limitations" was an inability to draw conclusions regarding "causation" between added sugar and negative health outcomes: "Finally, although observational studies are important in improving our understanding of nutrient-disease relationships, *they should not be directly interpreted as evidence of causal relationships* without considering other lines of evidence." RJN Ex. A (NHANES Analysis) at 523 (emphasis added). This is precisely the type of equivocation on causation that led the courts in *Becerra* and *Manuel* to conclude that the complaints were deficient. *Compare* RJN Ex. A (NHANES Analysis) at 523 ("*observational studies* are important in improving our understanding . . . [but] *should not be directly interpreted as evidence of causal relationships*"), *with Manuel*, 2018 WL 2269247 at *10, *11 (concluding study cited in complaint "expressly disclaims any generalizable causal conclusion" by quoting study's admission that "[d]espite accumulating evidence of the existence of these associations, *we are cautious not to conclude causality* between diet soda and the diabetic or prediabetic condition. The possibility of confounding by other dietary and lifestyle/behavioral factors *cannot be excluded from these observational studies*.") (emphases added).

Thus, when examined against the standards that *Becerra* and *Manuel* impose, the TAC provides no plausible allegation that consuming added sugar in General Mills' Cereals causes negative health effects. This nullifies the TAC's central theory of deception, which depends on an allegation that "[i]nstead of receiving products that had actual healthful qualities, the products [Plaintiff] received were not healthy, but rather their consumption *causes* increased risk of CHD, stroke and other morbidity." TAC ¶ 298 (emphasis added). This mandates the TAC's dismissal.

---

[3] The same study is cited in ¶¶ 63–64 of the TAC.

**B.      General Mills' Labels Are Not Misleading to a Reasonable Consumer**

Plaintiffs' argument that General Mills Cereals' labels are misleading to a reasonable consumer is based upon an unreasonably expansive reading *Hadley II* and *Krommenhock II*, particularly given this Court's orders' consistent instruction to apply this authority narrowly.[4]

**1.      The Court Should Dismiss With Prejudice All Claims Based on True and Not Misleading Statements.**

This Court's prior dismissal orders recognized *Hadley II*'s common-sense holding that "true phrases are not misleading to a reasonable consumer." Second Dismissal Order at 4; First Dismissal Order at 3. Notwithstanding this general principle, Plaintiffs' Opposition argues that any factually true statement "about the absence or presence of an ingredient or nutrient in an allegedly unhealthy food" is misleading if presented "in a context that makes the statement suggestive that the food is healthy." Opp. at 7. This is an overreading of *Hadley II*.

*Hadley II* held that a factually true statement about a product's ingredients like "No High Fructose Corn Syrup" is not actionable if the "statement . . . is not false and does not misrepresent the contents of the product." 273 F. Supp. 3d at 1081. *Hadley II* then went on to explain that a factually true statement might still be actionable if it is "accompanied by . . . another statement" that results in the factually true statement implying that the product is healthful. *Id.* at 1080 (identifying challenged statement as "Real Fruit / Take Care of You").

Plaintiff extends this narrow limitation in *Hadley II*—that a factually true statement might be interpreted differently if "accompanied by another statement" that changes its meaning—to argue that a truthful statement can be actionable if it is "presented in a context" that makes the statement misleading. Opp. at 7. But this unbounded "context" rule is not what emerges from *Hadley II*. Indeed, the plaintiffs in *Hadley II* alleged that Kellogg's labels were misleading "in the context of the labels as a whole," yet the court nonetheless dismissed the "No High Fructose Corn

---

[4] Plaintiffs' warranty claims fail for the same reason: Because no reasonable consumer would be misled by the "health and wellness" claims on General Mills Cereals, there is no breach of express or implied warranties. *Chuang*, 2017 WL 4286577, at *7; *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 987 (N.D. Cal. 2009) ("Statements constituting 'mere puffery' cannot support liability under a claim for breach of warranty."). Plaintiffs admit that their breach of express and implied warranty claims rise and fall with their consumer protection claims. *See* Opp. at 15.

Syrup" statement appearing on those exact same labels. *See, e.g.*, Second Amended Complaint ¶ 158, *Hadley v. Kellogg Sales Co.*, No. 16-cv-4955, (N.D. Cal. Apr. 5, 2017) (Dkt. No. 62). Here, the truthful statements that the TAC challenges are true statements that "do[] not misrepresent the contents of the product," nor are they "accompanied by another statement" that changes the truthfulness of what is stated. *Hadley II*, 273 F. Supp. 3d at 1080–81.

Applied here, *Hadley II* supports dismissal of the claims General Mills identifies as factually true in Exhibit A. Plaintiffs concede, for example, that the statements "Calcium = an essential mineral that helps build strong bones and teeth," and "Vitamin D = a nutrient that helps growing bodies absorb calcium" are factually true statements, and offer nothing more than their say-so that these statements suggest that the Cereals are healthier than Plaintiffs now believe them to be because of their added sugar content. Opp. at 7–8. As to the statement "healthful fruit and nut medley," Plaintiffs likewise fail to allege how and why disclosure of these ingredients in Basic 4 imparts any misleading message to consumers about the other health properties of the product. *Id*. As Plaintiffs' Opposition concedes, this statement is five words plucked out of a lengthy three-sentence 57-word description of the product directed to truthfully describing its ingredients.[5] *See* Opp. at 7 n.6. So, the statement "healthful fruit and nut medley" is, if anything, "accompanied by" additional statements that corroborate its truth. *Hadley II*, 273 F. Supp. 3d at 1080-81. Claims based on these statements should therefore be dismissed. *Id*.

---

[5] Plucking words from within longer statements or sentences is a technique that the TAC and its accompanying Appendix 1 frequently employ to give the illusion that a particular labeling claim is misleading. *See, e.g*., Opp. at 9 n.8 (while the TAC lists the full claim "A harvest of wholesome sweetness," the Opposition argues that "the import [sic] Plaintiffs' claim is not that 'harvest' is deceptive as to the amount of sugar, but that 'wholesome sweetness' is deceptive as to the product's healthfulness"); *id*. at 11 (while the TAC lists the full claim "'New! Multi Grain Cheerios Peanut Butter cereal makes my world feel like some big wonderful whirl of peanut butter taste. . . . It's easier than ever to help keep me feeling fit and fabulous," the Opposition argues that "[t]he import of the challenge is not [the first] sentence, but the subsequent statement that, with the product, 'It's easier than ever to help keep me feeling fit.'"). Opp. at 11. In keeping with the way reasonable consumers would encounter the advertising presented on General Mills' Cereals, the Court should consider the claims that Plaintiffs list in Appendix 1 to the TAC on a holistic, claim-by-claim basis. And when a given claim is, as a whole, not misleading, the Court should reject any attempt by Plaintiffs to make that claim misleading by dissecting from it surrounding language. *See, e.g*., *Hadley II*, 273 F. Supp. 3d at 1088 (categorically dismissing broader claims containing "'full and focused' statements").

-8-

Finally, Plaintiffs do not offer any argument whatsoever related to a number of additional statements identified in Exhibit A, including, for example, the Weight Watchers sponsorship carried on Fiber One Honey Clusters or the "Slimming waist design" of Multi Grain Peanut Butter Cheerios. *See generally* Opp.; Ex. A. These claims also are not misleading to a reasonable consumer and should be dismissed.

### 2.      The Court Should Dismiss With Prejudice All Claims Based on Nonactionable Puffery

Relying on *Hadley II*, this Court held that claims like "positively nutritious" and "a world of goodness" are "too hard to quantify objectively or to be reasonably relied upon and therefore . . . are considered non-actionable [puffery]." Second Dismissal Order at 4. Under this reasoning, the claims General Mills identifies as puffery in Exhibit A are non-actionable as a matter of law, and the Opposition fails to show otherwise.

The Opposition first argues that a selection of statements, including "simply nutritious" and "a deliciously smart choice for everyone at your breakfast table," are not puffery because these terms lack the necessary "subjective exaggerated descriptors" that transform a potentially actionable term (e.g., "nutritious") into nonactionable puffery (e.g., "positively nutritious"). Opp. at 9; Second Dismissal Order at 4. This argument fails because each of the terms Plaintiffs reference are indeed accompanied by precisely the type of subjective advertising language that renders the claims nonactionable. Opp. at 9; Ex. A.

The term "nutritious," for example, is not used in isolation on General Mills' labels, but is instead a part of the broader, subjective phrase "simply nutritious." Ex. A. There is no meaningful distinction between the phrase "simply nutritious" and the phrases "positively nutritious" and "unbelievably nutritious," which both this Court and the court in *Hadley II* held are non-actionable. *See Hadley II*, 273 F. Supp. 3d at 1083–84; Second Dismissal Order at 4. These phrases all represent "generalized, vague, and unspecific assertions upon which a reasonable consumer would not rely and are not actionable." Second Dismissal Order at 4. Moreover, reliance on dictionary definitions, as the Opposition argues, only further confirms that the phrase "simply nutritious" is indistinguishable from claims dismissed in this Court's prior orders and

-9-

*Hadley II. Compare* Opp. n. 7 ("'Simply,' is defined [by Merriam-Webster] as . . . 'clearly'"), *with Merriam-Webster.com*.  https://www.merriam-webster.com/dictionary/positive (last visited Feb. 8, 2019) (definition of "positive" is "expressed clearly").

Plaintiffs also argue that the phrase "It's a deliciously smart choice for everyone at your breakfast table" is actionable because it contains the word "smart." Opp. at 9. Not only do Plaintiffs not offer any support for the assumption that "smart" equates to "healthy," but Plaintiffs also ignore that the adverb "deliciously" modifies the term "smart," rendering that claim puffery under *Hadley II* and this Court's prior orders (even assuming that, standing alone, "smart" does equate to healthfulness). *Hadley II*, 273 F. Supp. 3d at 1083–86; Second Dismissal Order at 4. There is no objective basis upon which to measure whether or not a given "choice" is "deliciously smart" or not. *Id*. The same is true as to the phrase "a harvest of wholesome sweetness." Opp. at 9. Again, Plaintiffs argue that "the import" of their claim is that "'wholesome sweetness' is deceptive as to the product's healthfulness," Opp. at 9 n.8, but ignore that the phrase "wholesome sweetness" is accompanied by the "harvest" modifier, which is an unquantifiable measurement of the amount of "sweetness" in General Mills' Cereals and which renders the claim puffery. *Hadley II*, 273 F. Supp. 3d at 1083–86; Second Dismissal Order at 4.

A second category of claims that Plaintiffs identify as containing "'healthy' euphemisms" is also barred by the governing prior dismissal orders. Plaintiffs do not and cannot offer any argument as to why consumers would objectively rely upon phrases like "Another feel good flavor" to reach any definite conclusions about the health properties of General Mills' products. Opp. at 10. These terms are puffery. *See Krommenhock II*, 2018 WL 1335867, at *13 ("'feel good' is puffery. Absent evidence that 'feel good' is conveyed with respect to health or wellness, by itself it cannot be ascertained or verifiable and is puffery."). The same is true as to other claims in this category, including, for example, "Kid Tested, Mother Approved," and "Your taste buds will never know how well you're eating," neither of which is the type of measurable advertising that imparts reliance on behalf of reasonable consumers. Opp. at 10; RJN Ex. A. And finally, the

-10-

phrase "Please visit www.GeneralMills.com/health" implies nothing whatsoever about General Mills' products, except perhaps that these products are featured on a General Mills website.

Finally, Plaintiffs argue that the phrases (1) "a perfect balance of whole grain goodness and a delicious touch of chocolate taste in every bite," and (2) "Multi Grain Cheerios Peanut Butter cereal makes my world feel like some big wonderful whirl of peanut butter taste" are actionable because of the context in which they are presented. Opp. at 10–11. This argument fails. The phrases "perfect balance," "delicious touch of chocolate taste," and "makes my world feel like some big wonderful whirl of peanut butter taste" are puffery under *Hadley II*, 273 F. Supp. 3d at 1086 (holding that phrases "just the right amount of sweetness," "with a Touch of Golden Honey," "Touch of Sweetness," and "Drizzled with Honey" are nonactionable puffery). And these terms become no more certain and measurable when presented in connection with permitted health claims like "heart-healthy" or other non-actionable claims like "It's easier than ever to help keep me feeling fit." Opp. at 10. Indeed, even under a narrow reading of the governing prior orders, Plaintiffs cannot state an actionable claim by stitching together puffery with a factually true health claim or other puffery. *See generally Hadley II*, 273 F. Supp. 3d at 1083–86.

In sum, *Hadley II* and the Court's prior dismissal orders counsel that the claims General Mills has identified as puffery should be dismissed.

## C.     The Court Should Dismiss with Prejudice Claims That Are Preempted

Many claims in the TAC are nutrient content or health claims preempted under the Nutrition Labeling and Education Act ("NLEA") and the reasoning in *Hadley II*. Plaintiffs' arguments to the contrary rely on an overly narrow reading of the dismissal order in *Hadley II* in violation of the express terms of this Court's two prior orders.

### 1.     Preempted Nutrient Content Claims

The court in *Hadley II* explained that an implied nutrient content claim is a claim that "either (1) '[d]escribes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (e.g., 'high in oat bran'),'" or (2) (a) suggests that the food, "because of its nutrient content, may be useful in maintaining healthy dietary practices,"

and (b) identifies a nutrient in the product or "impl[ies] the presence of" a nutrient, such as fiber, through statements about an ingredient, such as whole grains. *Hadley II*, 273 F. Supp. 3d at 1074, 1078 (citing 21 C.F.R. § 101.13(b)); 21 C.F.R. § 101.65(d)(1)). This Court expressly adopted that holding in its Second Dismissal Order, reasoning "that statements that 'imply that the product contains fiber and is healthier as a result' or that 'contain . . . statements involving the word "wholesome" or "take care of you" in association with fiber' or whole grains were preempted." Second Dismissal Order, at 3 (quoting *Hadley II*, 273 F. Supp. 3d at 1077–78).

The seven claims identified as nutrient content claims in Exhibit A fall within the two-part test described in *Hadley II*. *See* Ex. A, at 5, 8, 10, 11, 20–21. First, the claim "With the *high fiber* in many Fiber One cereals to help curb your appetite, you'll be more likely to say 'no thank-you' whenever mid-morning temptation strikes," Ex. A, at 11-12 (emphasis added), describes the Cereal in a manner that suggests fiber is present in a certain amount, *i.e.*, "high fiber." 21 C.F.R. § 101.13(b) (listing example as "high in oat bran"). It, like the claim "Foods *high in fiber* help support good health," in *Hadley II*, is preempted. 273 F. Supp. 3d at 1077 (emphasis added).

The remaining claims state or imply the presence of fiber and, according to the TAC, suggest that the Cereal, "because of its nutrient content, may be useful in maintaining healthy dietary practices." *Hadley II*, 273 F. Supp. 3d at 1074. Those claims include two that specifically call out the presence of fiber in the Cereals: "Fiber One: One simple weight loss step – that tastes great!" and "Fiber One Protein." Ex. A, at 11. Just like the *Hadley II* claim "Fiber . . . plays a very important part in your digestive health and overall well-being," these claims are implied nutrient content claims and are preempted. *Hadley II*, 273 F. Supp. 3d at 1077. The same goes for claims that imply the presence of fiber by reference to whole grains, such as "More Grains. Less you! / . . . can help you manage your weight." Ex. A at 8; *see also id.* at 5 ("5 Lightly Sweetened Whole Grains in every bowl!"); *id.* at 8 ("More Grains, LESS YOU! / People who choose more whole grains tend to weigh less than those who don't."); *id.* at 20–21 (Whole Grains Council Stamp). *Compare id.*, *with Hadley II*, 273 F. Supp. 3d at 1078–79 ("MORE of the WHOLE GRAINS Your Body Needs").

-12-

Plaintiffs argue that the identified claims are not nutrient content claims because they do not imply that the product is healthier because of the nutrient, Opp. at 12, but this is precisely the argument the court rejected in *Hadley II*. There, the court cited plaintiff's complaint and reasoned that, "because these fiber statements are nutrient content claims that are, according to Plaintiff, misleading statements about the healthfulness of Defendant's products, they are preempted." *Hadley II*, 273 F. Supp. 3d at 1078–79; *see also id.* at 1078 ("With respect to all of these claims, Plaintiff alleges that these nutrient content claims imply that Plaintiff's products are healthy, but that they are rendered misleading because of the amount of added sugar in Defendant's product."). So too here. The core allegation in the TAC is that the health and wellness claims— including the claims identified above as nutrient content claims—are misleading precisely because they imply that the Cereals are healthy notwithstanding their added sugar content. *See* TAC ¶¶ 188–208 (discussing supposed health aura of whole grain and fiber claims, and specifically calling out several of the implied nutrient content claims listed above, such as "Whole Grains Council Stamp"). As in *Hadley II*, these claims are preempted.

### 2. Preempted Health Claims

In addition to preempted nutrient content claims, the TAC continues to challenge many claims that are preempted health claims under *Hadley II* and this Court's prior orders. Those claims should be dismissed. *Hadley II* adopted the holding in *In re Quaker Oats*, which provides that permitted health claims include "heart healthy" statements and images of hearts on food packages that also display FDA-approved language. *See Hadley II*, 273 F. Supp. 3d at 1076; *In re Quaker Oats Labeling Litig.*, 2012 WL 1034532, at *3 (N.D. Cal. Mar. 28, 2012). This Court expressly adopted *Hadley II*'s interpretation of *In re Quaker Oats*, explaining that "'heart healthy' statements on Defendant's packaging that are combined with [FDA-approved] language are also preempted." Second Dismissal Order at 3.

Here, many "heart healthy" statements in the TAC appear alongside language approved by 21 C.F.R. § 101.81, 21 C.F.R. § 101.75, and the FDA Modernization Act ("FDAMA"), 21 U.S.C. § 343(r)(3)(C). *See* Ex. A (identifying preempted health claims). Those include: "CAN HELP

-13-

lower CHOLESTEROL" inside heart vignette on Honey Nut Cheerios and Apple Cinnamon Cheerios, "Flavors Your Heart Will Love," on seven Cheerios varieties, and heart vignette under "OATMEAL CRISP" banner on Oatmeal Crisp Crunchy Almond and Oatmeal Crisp Hearty Raisin. *See* Ex. A, at 1, 2, 14; Declaration of Charles C. Sipos in Support of Request for Judicial Notice, Dkt. No. 50, Ex. A (hereinafter 2016 Sipos Decl.) at 1–3, 5, 8, 13 (Honey Nut Cheerios, Apple Cinnamon Cheerios, Frosted Cheerios, Fruity Cheerios, Chocolate Cheerios, and Honey Nut Medley Cheerios with language approved under 21 C.F.R. § 101.81); 2016 Sipos Decl., Ex. A, at 26–28 (Oatmeal Crisp cereals with FDAMA-approved language).[6] These statements, and those identified in Exhibit A, are preempted under this Court's and *Hadley II's* interpretation of NLEA.

Plaintiffs' arguments to the contrary misread the relevant regulations and seek to narrow *In re Quaker Oats*. Plaintiffs assert that health claims "on Basic 4 and several varieties of Cheerios . . . fail to meet all the requirements [of a health claim] because the claim did not state, as it was required, that 'coronary heart disease depends on many factors,'" apparently in reference to 21 C.F.R. § 101.77(d). Opp. at 14. This argument relies on the wrong regulation. Plaintiffs have already admitted that the "THREE GRAMS OF SOLUBLE FIBER" claim on Honey Nut Cheerios, Apple Cinnamon Cheerios, Frosted Cheerios, Fruity Cheerios, Chocolate Cheerios, and Honey Nut Medley Cheerios is authorized under 21 C.F.R. § 101.81. *See* Plf.'s Opp. to General Mills' Motion to Dismiss the Second Am. Compl. at 9 n.4 (Dkt. No. 70) (withdrawing challenges to claims in SAC ¶¶ 122b, 124b, 126b, 128b, 134b, 144b). The "heart healthy" claims that appear on the package alongside the approved "THREE GRAMS" claim are therefore preempted. *See In re Quaker Oats Labeling Litig.*, 2012 WL 1034532, at *3 ("heart healthy" statements that appear alongside "3 grams" language are preempted); Ex. A at 1–2, 6, 9.[7] Likewise, Basic 4 displays a

---

[6] Plaintiffs do not challenge General Mills' argument that "heart healthy" claims such as "can help lower cholesterol" appearing alongside FDAMA-approved claims on Oatmeal Crisp Hearty Raisin and Oatmeal Crisp Crunchy Almond are preempted. *See* Motion at 13; Ex. A at 14–17. This argument is therefore conceded. *See W. Trend, Inc. v. AMCO Ins. Co.*, 2015 WL 263934, at *3 (C.D. Cal. Jan. 8, 2015) (arguments not addressed in opposition are conceded).

[7] General Mills does not argue that "heart healthy" claims on Multi-Grain Cheerios and Cheerios + Ancient Grains are preempted. *See* Ex. A at 3, 10; *cf.* Opp. at 15 (arguing that such claims are

health claim that complies with 21 C.F.R. § 101.75(c), 2016 Sipos Decl. Ex. A at 25 ("While many factors affect heart disease, diets low in saturated fat and cholesterol may reduce the risk of this disease. Basic 4 cereal is low in fat, low in saturated fat and naturally cholesterol free."), and the "heart healthy" claims that appear alongside it are preempted, *see* Ex. A at 12 (listing claims). Plaintiffs' last-ditch argument that coronary heart disease is unrelated to cholesterol—rendering these claims outside of § 101.14(d)(2)'s scope, Opp. at 15—is belied by the FDA's guidance. *See* 21 C.F.R. § 101.77(a)(2) ("Diets low in . . . cholesterol are associated with decreased levels of blood total- and LDL-cholesterol, and thus, with decreased risk of developing coronary heart disease.").

To the extent that Plaintiffs argue that *Hadley II*'s holding about permitted health claims applies only to claims alongside language approved under 21 C.F.R. § 101.77(d), that argument misreads the relevant case law. *In re Quaker Oats* relied on language approved under § 101.77 *and* § 101.81 to find that "'heart healthy' statement and heart images are preempted." 2012 WL 1034532, at *3. And if there is doubt as to whether *In re Quaker Oats* extends beyond § 101.77(d), that uncertainty should be construed against Plaintiffs. Second Dismissal Order at 5. Finally, Plaintiffs' lengthy discussion of § 101.14 seeks to narrow this Court's interpretation of *In re Quaker Oats*, which held that "heart healthy" claims and images of hearts appearing on packages alongside FDA-approved language are preempted. 2012 WL 1034532, at *3; September 2018 Order at 3. Here, the "heart healthy" claims listed in Exhibit A appear alongside FDA-approved language and are therefore preempted. Nothing in § 101.14(d) impacts this analysis.

### III.    CONCLUSION

For the foregoing reasons, the TAC should be dismissed with prejudice.

---

not preempted health claims). Rather, these claims are not misleading to a reasonable consumer. Ex. A at 3, 10.

1    DATED:  February 8, 2019          **PERKINS COIE LLP**

2

3                    By: */s/ Charles C. Sipos* (pro hac vice)
                        Charles C. Sipos (*pro hac vice*)

4                        CSipos@perkinscoie.com

5                        David T. Biderman (Bar No. 101577)
                        DBiderman@perkinscoie.com

6                        PERKINS COIE LLP
                        505 Howard Street, Suite 1000

7                        San Francisco, CA 94105-3204
                        Telephone: 415.344.7000

8                        Facsimile: 415.344.7050

9                        Jeffrey M. Hanson (*pro hac vice*)
                        JHanson@perkinscoie.com

10                     Mica D. Klein (*pro hac vice*)
                     MicaKlein@perkinscoie.com

11                     Lauren Watts Staniar (pro hac vice)
                     LStaniar@perkinscoie.com

12                     PERKINS COIE LLP
                     1201 Third Avenue, Suite 4900

13                     Seattle, WA 98101-3099
                     Telephone: 206.359.8000

14                     Facsimile: 206.359.9000

15                     *Attorneys for Defendant General Mills*
                     *Sales, Inc.*

16

17

18

19

20

21

22

23

24

25

26

27

28

-16-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that on February 8, 2019, I caused to be filed via the CM/ECF system a true and correct copy of the foregoing document and that service of this document was accomplished on all parties in the case by the CM/ECF system.

<u>/s/ Mica D. Klein</u>
Mica D. Klein, *pro hac vice*
MicaKlein@perkinscoie.com

-1-